No. 2422

Second Circuit

JOHN E. HARRELL v. JOSEPH D. KILLGORE

(February 8, 1926, Opinion and Decree)

*(Syllabus by the Editor.)*

1. Louisiana Digest—Animals—Par. 1.

A father is warranted in killing a dog that was making a vicious attack upon his children, and cannot be held liable for the value of the dog.

(Civil Code Arts. 2315 and 2321. Editor's note.)

Appeal from the Thirteenth Judicial District Court of Louisiana, Parish of Rapides, Hon. L. L. Hooe, Judge.

This is a suit to recover the value of a pedigreed bird dog killed by the defendant. Defendant filed a reconventional demand. There was judgment rejecting the demands of both the plaintiff and the defendant. The plaintiff and defendant both appealed.

Judgment affirmed.

K. Hundley, of Alexandria, attorney for plaintiff, appellant.

R. C. Bauer, of Alexandria, attorney for defendant, appellee.

ODOM, J. Plaintiff brings this suit to recover the sum of $100.00, the value of a pedigreed and registered bird dog, which, he alleges, the defendant killed on or about October 7, 1923, without justification or excuse.

He alleges that the dog was well worth the sum of $100.00.

Defendant, in answer, admitted that he killed plaintiff's dog, but alleged that he did so on his own premises and within his enclosed pasture, and that he did so for the reason that plaintiff's dog was, at the time he shot and killed him, making a vicious attack upon his two young children, one seven and the other eleven years of age.

He denies liability, and, alleging that his two children were very much frightened and injured by the attack made upon them by the dog, he reconvened for the sum of $125.00.

There was judgment in the District Court rejecting plaintiff's demand at his cost, and also rejecting the demand of the defendant in reconvention.

From this judgment both the plaintiff and the defendant appealed.

OPINION

The defendant did not perfect his appeal and therefore his demand in reconvention cannot be considered in this court.

The testimony shows that plaintiff was the owner of a pedigreed and registered bird dog which was assessed on the assessment rolls of Rapides parish at the sum of $100.00 and that the dog was well worth that amount.

It seems that the dog was about a year old and had been owned by plaintiff from the time it was six weeks old. It had been raised on plaintiff's premises as a pet, and, according to plaintiff's testimony and that of other witnesses introduced by him, the dog was not of a vicious nature but, on the contrary, was inclined to be friendly, and had never made an attack upon any one.

Plaintiff testified that his five-year-old child had constantly played with the dog and that the dog had never at any time attacked or shown any disposition to attack his child or any other child.

About the time the dog was killed plaintiff had put it in charge of another party to be kept while plaintiff was away on his vacation. Mr. Barton, in whose care the dog was left, testified that he kept this dog and one other belonging to the plaintiff in a kennel but that on this occasion the two dogs escaped and that one of them returned but that the other did not.

He does not know what became of the dog which did not return, except through hearsay.

Defendant, as a witness in his own behalf, admitted that he killed the dog with a shotgun, and his account of the affair is substantially as follows: He has an enclosed pasture adjacent to his house in which there is a swimming pool which was frequented by his two small children. On this occasion he was gathering tomatoes in a patch or garden near his residence, when he heard his children screaming in such a manner as to convince him that something very much out of the ordinary had happened to them, and that their screams so alarmed him that he left his tomato patch and ran through his house, procuring a double-barrel shotgun as he went through, and started in the direction from which the children were screaming, and that as he got out into the open he saw the children running towards him, still screaming; that he hurried to meet them, and as he go near them he saw plaintiff's dog pursuing them. He testified that the dog was barking and presented the appearance of being mad. He testified that when he met his children the dog was within twelve or fifteen feet of them and that he was convinced, from the way the dog was acting, that it was mad (explaining that he thought the dog was afflicted with rabies). He said that the attack was such that he thought he could not afford to take any chances and therefore shot and killed it.

His 17-year-old son testified that when he heard the children screaming he ran to their rescue and got to them about the time his father did and that the dog was making what he considered a very vicious attack upon the children and that he called to his father to shoot the dog.

He testified that at the time his father shot the dog he was some five or six steps from it.

One of the children who were attacked by the dog is a little girl about twelve years old, who testified that she and her brother were at the swimming pool near the fence and that when she first saw the dog it was on the outside of the fence running towards them barking and growling and that she and her brother became frightened and ran away from the swimming pool towards the house. She did not see the dog any more until about the time it was shot, but she says the dog was killed pursuing them and that she and her brother were so frightened that she did not look around to see the dog.

The testimony of the defendant and his two children is not contradicted. It seems that there was no one else in the pasture or near enough to see what happened.

As soon as defendant killed the dog he removed from its neck a collar on which there was a tag with the plaintiff's name thereon and returned to his residence. About that time some real estate men arrived at his residence for the purpose of leasing his land for oil and gas. He testified that he told these parties about his having killed the dog and showed them the tag and asked them if they knew the party whose name was on the tag and that he asked them to make inquiry as to who owned the dog. He said that his purpose in doing so was to ascertain if the owner of the dog had other dogs which he might confine in case they had been bitten by the dog which he had killed; he at the time being of the opinion that the dog was afflicted with rabies.

He further testified, and his testimony on that point is not disputed, that there was considerable talk in the community about "mad dogs".

From this testimony we are perfectly satisfied that the defendant killed the dog thinking it was necessary in order to protect his children, and that he was in perfect good faith in doing so.

The dog at the time, according to the testimony, was making a vicious attack upon his children, and we think he was warranted in killing it. He and his son both testify that no attempt was made by either of them to prevent the dog from biting the children after they reached the scene; but the defendant explains that by saying that he thought the dog was mad and that he could not afford to take any chances on his children being bitten or on being bitten himself.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be affirmed at plaintiff's cost.